Welcome to the Fourth Circuit. Our first case this morning is case number, it's a consolidated appeals 23-1902 and 23-2254. Counsel, before you begin, I want to welcome our students from William & Mary who are here today. Thank you all for coming and we're glad to have you here. Counsel, if you're ready, you may begin. Thank you, Your Honor. David Corrigan from Harmon Claytor Corrigan & Wellman on behalf of the appellants in the Gibbons v. Gibbs and Troxell case. We're here, as you mentioned, on two separate appeals. The first denying the 11th Amendment immunity to Steve Troxell and Betty Gibbs in their official capacity. The second denying 11th Amendment immunity to them in their personal capacity claims. The plaintiff here, Ms. Gibbons, is the former registrar who was not reappointed to her position. She sued the local Electoral Board and two local Electoral Board members alleging violation of her First Amendment rights. The Electoral Board, Troxell, and Gibbs all asserted 11th Amendment immunity. The district court held, number one, that the Lynchburg Electoral Board is immune and that decision was not appealed. Number two, that Troxell and Gibbs, in their official capacity, are also immune for retrospective relief. That is not appealed, but the part that is appealed was the holding that they were not immune from prospective injunctive relief under the Ex Parte Young Doctrine, which, of course, is a long-recognized legal fiction allowing prospective injunctive relief against a state actor whose conduct is an ongoing violation of the Constitution. And our argument here is really pretty simple. Neither Troxell nor Gibbs, in their capacity as members of the local Electoral Board, could, on their own, reinstate Ms. Gibbons. So the relief could not be provided by making an Ex Parte Young decision towards either of them. And for that reason, the exception to Ex Parte Young does not apply, and the 11th Amendment immunity does apply. That's with respect to the official capacity claims. And we found... Mr. Corfin, can I just ask you what strikes me as the fatal problem with that argument? Is there any way for us to buy that argument without saying this court was wrong to uphold injunctive relief in McConnell? I understand that you argue that McConnell did not consider this question, that it didn't analyze this question. I think that's fair. But McConnell affirmed a grant of injunctive relief in a factual scenario that seems almost identical to this to me. So I don't know how we can buy your argument without necessarily saying this court was wrong in McConnell. And I guess my position would be that the court would have to say, yes, that they were wrong. I don't think this court can say that a previous panel of this court was wrong about its bottom line judgment. What authority do you have for the proposition that we can say a previous panel of this court literally reached the wrong conclusion in the case before it? I don't have any authority for that concept. I do have authority that I've mentioned. We have the, I say authority, we have the Stewart case from Judge Hudson in the Eastern District where he... With respect to Judge Hudson, I didn't see him saying a single thing about our opinion of McConnell either. He does not address it. Does a federal district court in the Eastern District of Virginia have the authority to issue a decision that is directly contrary to a published decision of this court? I would say that his reasoning is the reasoning that we adopted. And that's my response to the question. I don't have another response. Counsel, I mean, just to follow up on that and the notion of what one panel can do with respect to another panel opinion. We recently addressed that and said, unlike discretionary application of stare decisis by the Supreme Court, we are bound by prior panel decisions. And then we go on to say this. To state the obvious, this means we must follow a prior panel decision even if it had abysmal reasoning, put forward unworkable commands, engendered no reliance interest, lacked consistency with other decisions, and has been undermined by later developments. Indeed, for this principle to mean anything, we must do so in exactly those cases. And that's from which case? That's Payne v. Taslemi, 998 F3, 648, 2021. So, I mean, there may be a good argument that there was insufficient reasoning on the issue you've raised here today, but it seems like our hands are tied. If that's the case, then that concludes the argument. But it hasn't been raised until this moment in this case, that specific issue. What we did was argue the merits of our position of you have to have the power to order an individual. And in that case, you don't have that power. Well, can I ask you, just assume for the sake of argument that we could somehow get around that problem. Doesn't it create really perverse incentives to say, if a government wants to avoid ex parte young, all they just have to do is say no one person can make any decision, you need a multi-member body to make every consequential decision, you could just obliterate ex parte young if that was the rule. I think where we have to land on this from our perspective is with the concerns with the 11th Amendment itself. That it does indeed say that you can't sue the state in federal court. But you're not suing the state. You're just saying these two people should be ordered to do something different than they both previously did. But the fiction is that you're still effectively affecting the state with what you're doing. Sure, but when you sue the Attorney General of Minnesota in ex parte young, it's a pretty big fiction that you're not suing the state of Minnesota. I mean, young in ex parte young was the Attorney General of Minnesota who was being told he couldn't enforce the laws of Minnesota. That is already quite a fiction that you're not suing the state of Minnesota. Agreed. I mean, that's the whole point. The whole thing is a fiction. So it is to be narrowly construed. And the concern would be you have a five-member board or a seven-member board or an 11-member board. Now you have six people. Are you going to take the, is the court going to have the power to order six people? There may be an issue. I mean, you know, they sue two people. Maybe that's an issue. Maybe it's not. But the concept that you can't sue individuals because a board makes the decision would mean that if the University of Virginia decided it was not going to admit Christians and a group of Christians who wanted to go there sued the board and the president to try to seek injunctive relief on that. Under your theory, that would be barred? I think against cases... A decision has got to be made by the Board of Trustees. I think in cases against Virginia, the rector is involved, and that may be the person who ultimately enforces the decisions of the board. Maybe. I don't know exactly the governance of that. I don't either. But I think, we look at that question because there are UVA cases that are in this arena. But I thought that the thing was there you could sue the rector and say to the rector, you have to do this. So, Mr. Corrigan, isn't the issue harder for you even right now because you have a three-person board, and McConnell had a three-person board, and Wise had a three-person board. And so exactly on this factual circumstance, the Fourth Circuit has spoken. So your hypothetical going forward has existed since McConnell was decided. Am I right? I think that's true. But, again, the point, the argument that we're making is simply it wasn't considered previously. And I understand, having heard the court discuss pain, how that harms my argument with respect to that. We also have the personal capacity claims. And, again, you will notice that we didn't originally file a 12B6. We ended up filing a 12C after Judge Hudson made his decision. Our feeling was we have a client to represent, and we have precedent within the Fourth Circuit that says a personal capacity claim is not really stated under these circumstances because everything they do is actually an official capacity claim. So that's why we filed the 12C. That's why we pursued the 12C to this point on the personal capacity claims. And the argument ultimately there is, and the Adams versus Ferguson deals with the question of official capacity versus personal capacity. If you notice, I was the lawyer in that case, so I'm very familiar with Adams versus Ferguson. And in that case, we thought, because Ferguson was the Director or Commissioner of the Department of Behavioral Health and Developmental Services in Richmond, and what was unfortunately happening with Jim and Michael Mitchell was, you know, cities away and levels away, that what they were trying to really do was sue her. But what the Fourth Circuit said was, no, read the allegations. The allegations say she did this and she did that and she did this. They said we're not going to go past that. We're going to allow it to go forward. And, you know, having learned that lesson initially in this case, we were thinking that's where we were going. Here we're going to have to pursue qualified immunity and things of that nature. But the difference here is the allegations are very much the electoral board, you know, did the wrong thing. In their official capacity, they did the wrong thing. And then he just adds the personal capacity claim. So this, looking at the reasoning of Judge Hudson, where he said everything you do, because what they're complaining of is appointing Daniel Pence as registrar and not appointing her as registrar. Ultimately, that's what they're complaining of. Clearly, that's official. That's not a personal capacity issue. So that's why we're making that argument. Does it matter? I mean, isn't our law primarily that if based on who would pay, as alleged, the damages? I recognize Adams doesn't say that's enough altogether. But it seems like in this world of ex parte young and qualified immunity, you know, fiction runs abound. And another one here, they all have some interconnection. But, you know, we don't have much of the slate's not clean on this one either, is it? No, it's not. But our position is that everything that was done was done in official capacity. And we can go to the Martin factors, which is what Judge Hudson did in the Stewart case. Okay, but isn't there a big problem there, which is that Adams says the Martin factors are categorically inapplicable in 1983 lawsuits, and this is a 1983 lawsuit? I mean, I can quote you the language from Adams. It literally says the Martin factors don't apply to 1983 suits. And I guess the issue is whether there was some daylight there. I don't know what daylight there is to say the Martin factors don't apply to 1983 lawsuits. Judge Hudson found it in a similar circumstance, and therefore that's why we argued it. But the overall point is everything that they did was in their official capacity. It wasn't anything that they did that wasn't official capacity. But, I mean, Section 1983 defendants argue that all the time. And ever since Hafer v. Mila, the Supreme Court says we don't do that. I mean, like, they say in their complaint, to the extent the individual members are proven to have engaged in violations described in their personal capacity, they're liable to misgivings for those violations as individuals, regardless of Manel liability is deemed to attach. How is that different from all kinds of cases? Like, I understand they say a lot of stuff that sounds official capacity, but they clearly make a personal capacity allegation. And I think you said at the beginning, the judge dismissed the official capacity. To the extent they're making official capacity claims, those are gone. What rule says just because you mistakenly pled some official capacity claims, we dismiss your personal capacity claims? The rule does not say that. But our argument is, in this instance, this is the rare instance where it applies. That's our position on that. Thank you. Thank you. Thank you, Counsel. Good morning, Your Honors. May it please the Court. Steve Pershing for Christine Gibbons. I will try to stick to nonfiction. I have three quick points I think should decide the appeal. One is about will. One is about this only through the body argument. And then one is about the individual capacity claims. And, of course, will does not say what the briefs of the appellants contend. Official capacity claims for damages against individual state officers are deemed suits against the state, barred by immunity. But official capacity claims for prospective injunctive relief are not suits against the state. They're not barred. That's what Ex parte Young gives us as the avenue. Will actually says that's the commonplace avenue. It quotes Lawrence Tribe's treatise, of all things, for the use of the word commonplace. Ex parte Young says these claims are preserved. The only through the body argument that individual members of a multi-member public body don't act in some cognizable sense or that their acts aren't official until the board pronounces them or they don't single-handedly as individuals have the power to accord the relief that is sought. All of those arguments have to fail. They would cut the heart out of Ex parte Young. They would mean that the only constitutional review that could ever be had, and Judge Qualabam, you made this point already, would be review of acts by single office holders, by sole one-person authorities, so that concerted action in violation of the Constitution would be unreviewable purely because more than one official concerted in the violation. That would put us in this weird neverland of impunity where collective guilt is the guilt of no one is the reason why Justice Jackson invaded against that at Nuremberg, and I don't say that lightly. Now on the other side, luckily that's not the law, and we need to look no further than Verizon, Verizon Maryland, against the Maryland Public Utility Commission and their members. That case was decided on this issue. Why aren't you just arguing, I mean those are interesting things, why aren't you just telling us we just kind of said McConnell controls this case and our precedent binds us. It seems like you're arguing a bunch of stuff other than what we, yeah, it seems like the most direct argument. You can argue however you want. I'm just curious. The answer, Your Honor, is out of respect for the appellant's position that McConnell did not consider this only through the body argument. Frankly, as an advocate and an officer of the court, I would dearly love this court to clear that up. It seems to me that it is true that McConnell couldn't have been decided the way it was, that the Chester case against Wise County couldn't have been, and that Sales v. Grant, which was actually a Lynchburg registrar case, couldn't have been, and that the fact they didn't specifically consider this only through the body argument doesn't matter. In fact, when and if qualified immunity comes up on remand, that's exactly what we're going to say. In McConnell, they got a freebie maybe, but not anymore. In fact, Judge Ballou specifically said in one of our colloquies with the court, good luck with that, referring to the qualified immunity arguments if they wanted to make them. Aside from not the issues before us now, you can't just claim injunctive relief and get the benefit of Ex parte Young if the injunctive relief by facts or law is an untenable claim for injunctive relief. Correct? You can't get Ex parte Young just by pleading. It's essentially a 12 v. 6 thing. If your claim fails because you're seeking something, the nature of the injunctive relief is not a legally viable claim. You don't get passed it that way, but that's a 12 v. 6 type issue, not a 12 v. 1 issue. It could even be a Rule 8 issue if you read Iqbal that way. It's not plausible. Just to tell you why I'm asking that, and it's not before us, but your injunctive relief only seeks an injunction against the dismissal, and your complaint seems to all but concede she wasn't dismissed. She was not rehired. You may have a good non-rehirement claim, but I'm not sure you have a valid injunctive claim either as things stand now. We're only here on 12 v. 1 and the other issue. I'm so glad you mentioned that because it's been of a concern to me, but the reason the complaint reads that way is that at the time it was filed, she hadn't yet been dismissed. She had been told. You filed it like two days before her term ended, and you said she was told she wasn't going to be rehired or reappointed. I'm not saying it was moot at the time, but my only point is the only injunctive relief you sought seems inconsistent with the rest of your allegations and the facts as they exist. I think the Court points out something quite valid and important. If the Court below wants us to amend on remand, of course we will. Judge Ballou understood, and all of us did, that we were asking for the person not to be dismissed and that after dismissal took effect we would be asking for reinstatement. It's true that's not in the complaint as it was filed, and we have not yet amended it, but we will. That, I think, is a totally fair concern, and it concerns me. But at this point what we're arguing about is whether the Court has power to adjudicate. And so the question of an amendment is an immediate subsequent question that I think would be faced on remand. But if the Court wants to look at what is pleaded in terms of the official capacity liability of the individual Board members, I think that's pretty obvious from the pleadings,  events have overtaken the request we originally made for TRO keeping her in place. We actually thought, perhaps naively, that we could get that relief before the dismissal took effect. There was never a dismissal. You keep saying that. There was never a dismissal. She had a statutory four-year term. They then made a decision about who to hire for the next term. So, I mean, it seems like you want it to be a dismissal, and it may be improper not to rehire. I'm not saying anything, but you seem to kind of keep wanting to... Your Honor, you're correct. It's my sort of stumbling. It's not a dismissal, but it doesn't matter. The Court is correct. It was not a dismissal. It was a removal, a refusal to rehire. That's quite true. No removal either. She had a job for four years. Her term ended, and she wasn't rehired. It's a failure to rehire claim. In precise legal terms, yes, I do not dispute. But as a practical matter, for decades, registrars, since McConnell really, registrars have been permitted to continue in office if they're not delinquent in their duties under the state statute that gives the only criterion, you know, present in the statute for the discharge or non-rehire of a registrar. I'm not here to keep debating this, but you seem to be reading a four-year term out of the statute, but that's for another day. I'm not asking you to concede I'm right. I may be wrong. That's not before us. We're here on jurisdiction. Your Honor, I'm happy to address this particular point. I agree that it is valid, and I looked for the answer in the cases and found it. McConnell specifically and explicitly says the failure to rehire, which is exactly what it was, in that case the woman's term was up, is the same as a dismissal at midterm or, you know, halfway through or whatever, because neither one can happen for partisan political reasons. If this really is an Elrod case, then it doesn't matter whether they don't rehire her or dismiss her in the middle. It has the same constitutional taint. That's the answer. McConnell, that's the answer I run with. On the individual capacity claims, they don't convert. Martin does not apply. But if the court wanted to look at Martin, our position is that the personal interest of the defendants is enough by itself to take the case completely out of Martin, even if Martin did apply. But I shudder to think what we would have of Section 1983. In fact, I don't think you could see it with a magnifying glass if this argument were correct. And this is what the court understood in Adams v. Ferguson, and my esteemed opposing counsel says he learned the lessons. The difficulty, of course, with it, the fatal difficulty, is that the first prong of Martin, the question whether the act challenged is inextricably bound up with the actor's official duties, is the question whether those acts, the challenged acts, were committed under color of state law. That's the basic predicate for a 1983 case. So the very premise of 1983 liability would then be negated in every case by this immunity that Martin would have established, and that is why the court decided soundly, if I think correctly, in Adams v. Ferguson that Section 1983 had to be carved out. But again, even if you wanted to look to the Martin factors, partisanship, partisan interests, are personal to these defendants. That will be our abundant proof on remand. These were partisan motives, and those are not only not official, but rather personal in the Martin sense, but I dare say they are inimical to what these folks are supposed to be doing. There's no way you can reconcile a personal partisan interest with the imperative to remain nonpartisan. And may I say that even though McConnell and Sales v. Grant and Chester v. Wise County were cases of identifiable members of one party, self-identified as members of one party, removing or not rehiring or dismissing registrar's office officials, you know, registrars or deputies, known to be of another party, in this situation our record will reflect that although the defendants we're suing are avowed partisans, one of them took a bus to Washington on January the 6th and publicly said that the election was stolen and wants somebody like that in office in Lynchburg in the registrar's chair. But the registrar, my client, is so assiduously nonpartisan, I don't even know her party registration or her voter preferences, and nobody else does either. She was a student activities person at Liberty University before she took this job. She's a Mormon, a mom. She's not partisan at all. In fact, she so studiously refrains from it that nobody knows. Counselor, I think you're arguing stuff that's outside the complaint, I believe, right now. That may be. It's in the record, but your Honor is correct. It's not specifically alleged except that she is nonpartisan in her function, and I would say she's the ultimate example of nonpartisanship. So this is not a case where it's just partisan wars. We came across something where Judge Wilkinson said a long time ago he didn't want to see, and none of us do. Federal courts degenerate into political spectacles. That's not what this is. We're upholding nonpartisanship here by reversing their action. If the court has more questions, I'd be so happy to grapple with them. Thank you, Counselor. Thank you, Your Honor. Do you have some time? Okay. Thank you. Appreciate the arguments of both counsel. Appreciate you all being here today. We're going to come down and greet counsel, and then we're going to take a break, and we'll come back after the break. Thank you. This honorable court will take a brief recess. Thank you. Thank you. Appreciate it. Thank you. Thanks for being here. Thank you very much. Thank you. Thank you. Thank you. Thank you. Thank you. Are we changing out? I just want to make sure. There we go. Yay. Just wanted to make sure. Yeah, we appreciate it.
judges: A. Marvin Quattlebaum Jr., Toby J. Heytens, M. Hannah Lauck